UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DONNELL H. DAWSON,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,

    Defendant.

Case No. C10-1999-JCC-BAT

**REPORT AND RECOMMENDATION**

Donnell H. Dawson seeks review of the denial of his Supplemental Security Income and Disability Insurance Benefits applications. He contends that the ALJ erred by (1) failing to find Mr. Dawson's edema was a severe impairment; (2) failing to properly evaluate the medical opinions; (3) finding Mr. Dawson not fully credible; and (4) evaluating Mr. Dawson's residual functional capacity, posing a hypothetical to the vocational expert, and finding Mr. Dawson not disabled at step five. Dkt. 12. As discussed below, the Court recommends the case be **REVERSED** and **REMANDED** for an award of benefits.

## INTRODUCTION

Donnell Dawson is currently 49 years old, has two years of college education, and has worked as a bouncer and manufacturing worker.[1] On January 3, 2007, he applied for benefits,

---

[1] Tr. 16, 115, 128.

REPORT AND RECOMMENDATION - 1

alleging disability as of January 1, 2006.[2] He later amended his applications to allege a closed period of disability from January 1, 2006, through May 1, 2009. Tr. 48. His applications were denied initially and on reconsideration. Tr. 41-44. The ALJ conducted a hearing on September 4, 2009, and issued a decision on September 25, 2009, finding Mr. Dawson not disabled. Tr. 45-60. As the Appeals Council denied Mr. Dawson's request for review, the ALJ's decision is the Commissioner's final decision. Tr. 1.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process[3] the ALJ made the following findings:

**Step one:** Mr. Dawson had not engaged in substantial gainful activity since January 1, 2006. Tr. 50.

**Step two:** Mr. Dawson had the following severe impairments: chronic heart failure, obesity, sleep apnea, hypertension, depression, and a history of drug abuse in remission. *Id*.

**Step three:** These impairments did not meet or equal the requirements of a listed impairment.[4] Tr. 51.

**Residual Functional Capacity:** Mr. Dawson had the residual functional capacity on a sustained basis to perform light work as follows: He could lift and carry 20 pounds occasionally and 10 pounds frequently with a sit/stand option and an ability to walk 4 hours in an 8-hour workday. His ability to push/pull and fine and gross dexterity were unlimited except pushing with the lower extremity was limited to occasionally. He could occasionally climb stairs but should not climb ladders, ropes, scaffolds, or run. He was able to bend, stoop, crouch, crawl, balance, twist, and squat, but should avoid heights. Mentally, he retained the ability to get along with others, understand simple instructions, concentrate and perform simple tasks, and respond and adapt to workplace changes and supervision. Tr. 53.

**Step four:** Mr. Dawson could not perform his past work. Tr. 58.

**Step five:** As there exists a significant number of jobs Mr. Dawson could perform, he

---

[2] Tr. 115, 120.
[3] 20 C.F.R. §§ 404.1520, 416.920.
[4] 20 C.F.R. Part 404, Subpart P. Appendix 1.

REPORT AND RECOMMENDATION - 2

was not disabled. Tr. 59-60.

**DISCUSSION**

**A.  Mr. Dawson's edema**

Mr. Dawson argues that the ALJ erred by failing to find that his edema was a severe impairment at step two. Dkt. 12 at 8. At step two, a claimant must make a threshold showing that he has a medically determinable impairment and that the impairment is severe. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); 20 C.F.R. § 404.1520(c), 416.920(c). The step-two inquiry is "a *de minimis* screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). An ALJ can find an impairment "not severe" only if the evidence establishes a slight abnormality that has no more than a minimal effect on the claimant's ability to work. *Id.* An impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings. 20 C.F.R. § 404.1508. The claimant bears the burden of showing a medically determinable severe impairment. *Bowen*, 482 U.S. at 146 & n.5.

The ALJ did not find Mr. Dawson's edema to be a severe impairment because his edema was a sign of his chronic heart failure, not a separate impairment. The listings include edema as a sign of chronic heart failure; there is no separate listing for edema. *See* 20 C.F.R. Part 404, Subpart P., Appendix 1, §§ 4.00D2, 4.02. A sign or symptom can establish the existence of an impairment, but is not an impairment itself. The ALJ did not err by failing to find Mr. Dawson's edema to be, in and of itself, a severe impairment.

Moreover, even if the ALJ erred by failing to find Mr. Dawson's edema to be a severe impairment, the error is harmless so long as the ALJ considered edema at the later steps. *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). In evaluating Mr. Dawson's residual functional capacity, the ALJ discussed evidence of Mr. Dawson's edema. Tr. 54-56. When

posing a hypothetical to the vocational expert, the ALJ stated that pushing with the lower extremities "would be on an occasional basis, I'm taking into consideration the edema." Tr. 38. The ALJ included this limitation on pushing in his residual functional capacity finding. Tr. 53. The ALJ thus did consider Mr. Dawson's' edema at the later steps.

However, as will be discussed below, the ALJ erred by failing to properly consider Mr. Dawson's treating doctors' opinions about the functional limitations caused by his edema. The Court will discuss this failure below.

**B.** **Medical Opinions**

Mr. Dawson argues that the ALJ erred in evaluating the opinions of treating doctors Andrew Derksen-Schrock, M.D., Howard Lewis, M.D., and Rachel Shorr, M.D., examining doctor Dan Phan, M.D., and the consulting state agency physicians.

In general, more weight should be given to the opinion of a treating doctor than to a non-treating doctor, and more weight to the opinion of an examining doctor than to a non-examining doctor. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where not contradicted by another doctor, a treating or examining doctor's opinion may be rejected only for "clear and convincing reasons." *Id.* at 830-31. Where contradicted, a treating or examining doctor's opinion may not be rejected without "specific and legitimate reasons" that are supported by substantial evidence in the record. *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). An ALJ does this by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation of the facts and evidence, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ must do more than offer his conclusions; he must also explain why his interpretation, rather than the treating doctor's interpretation, is correct. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (citing *Embrey v. Bowen*, 849 F.2d

### 1. Dr. Derksen-Schrock

Dr. Derksen-Schrock began treating Mr. Dawson in June 2009. In July 2009, Dr. Derksen-Schrock opined that Mr. Dawson would not have been able to perform sedentary, light, or medium work during the claimed disability period due to his impairments. He stated that Mr. Dawson's impairments would cause shortness of breath, fatigue, and extremity swelling, which would require frequent leg elevation. He opined that when Mr. Dawson's impairments were not well-controlled, as was the case during a portion of the claimed disability period, they could have caused him to miss at least three days of work per month. Dr. Derksen-Schrock stated that because he began treating Mr. Dawson after the claimed disability period, his opinion was based on his interactions with Mr. Dawson and a thorough chart review. Tr. 501-02.

The ALJ noted that Dr. Derksen-Schrock began treating Mr. Dawson after the claimed disability period and found that there was "no evidence as to what evidence was submitted to [Dr. Derksen-Schrock] for review." The ALJ further found that the objective medical evidence as a whole did not support Dr. Derksen-Schrock's assessment. The ALJ thus gave little weight to Dr. Derksen-Schrock's opinion. Tr. 58.

An ALJ should not disregard a medical opinion solely because it is retrospective in nature. *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988); *see also* Social Security Ruling ("SSR") 83-20. This is true even for a doctor who did not see the claimant during the disability period. *See Smith*, 849 F.2d at 1225 (citing *Boyd v. Heckler*, 704 F.2d 1207, 1211 (11th Cir. 1983)). The mere fact that Dr. Derksen-Schrock's opinion was retrospective and thus necessarily based at least in part on his review of Mr. Dawson's chart was not a legitimate reason to reject the opinion.

REPORT AND RECOMMENDATION - 5

In addition, it is insufficient for an ALJ to reject the opinion of a treating physician by merely stating, without more, that there is a lack of objective medical findings in the record to support that opinion. *See Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir.1988). The ALJ failed to explain why his interpretation of the evidence, rather than Dr. Derksen-Schrock's interpretation, is correct. The ALJ did not give sufficient reasons to give little weight to Dr. Derksen-Schrock's opinion.

    *2.    Dr. Lewis*

Treating physician Dr. Lewis first examined Mr. Dawson in August 2006, when he diagnosed Mr. Dawson with heart failure, which he considered to be a serious problem. He believed the etiology was possibly related to a combination of sleep disorder, cocaine-related lung disease, and smoking. He observed lower extremity edema extending into the scrotum. Tr. 344-45. In September 2006, Dr. Lewis noted that Mr. Dawson felt he was doing better despite a mix up on his medication; he continued to have 2+ lower extremity edema to the scrotum. Tr. 348. In January 2007, Dr. Lewis found Mr. Dawson much better clinically, with 1+ bilateral ankle edema. Tr. 347. In February 2007, Dr. Lewis noted continued progress and no edema. Tr. 346. In June 2007, Dr. Lewis noted that Mr. Dawson had stopped taking his medications for a while and had 2+ bilateral ankle edema. Tr. 467. In December 2007, Dr. Lewis noted that Mr. Dawson was doing well, but had 1+ chronic edema. Tr. 464.

In August 2009, Dr. Lewis opined that Mr. Dawson would not have been able to perform sedentary, light, or medium work during the claimed disability period due to his chronic heart failure. He stated that Mr. Dawson's heart failure would cause fatigue and extremity swelling, which would require frequent reclining and leg elevation. He opined that during the disability period Mr. Dawson's impairments would have resulted in him missing at least three days of

work per month. Tr. 504-05.

The ALJ found that Dr. Lewis's progress notes did not support the other objective medical evidence considered as a whole, especially in light of Mr. Dawson's reported activities of daily living. The ALJ thus gave Dr. Lewis's opinion little weight. Tr. 58.

Again, the ALJ may not merely state that objective medical evidence does not support a treating doctor's opinion. *Embrey*, 849 F.2d at 421. The ALJ failed to identify what other evidence conflicted with Dr. Lewis's opinion, or explain the nature of this supposed conflict. This was not a sufficient reason to reject a treating doctor's opinion.

*3. Dr. Shorr*

Treating physician Dr. Shorr opined in August 2006 that Mr. Dawson was markedly limited in his ability to walk, lift, handle, and carry due to breathing problems resulting from his heart failure. She further opined that his overall work level was sedentary, and he could participate in pre-employment activities such as job search or employment classes. Tr. 253-56. The ALJ found it significant that Dr. Shorr did not opine that Mr. Dawson was precluded from all work activity and gave some slight weight to this assessment. Tr. 58.

The ALJ noted what Dr. Shorr did not opine. But he gave no explanation for his assessment of the opinions she did give. It is unclear why the ALJ gave Dr. Shorr's opinions little weight, or how he assessed her opinion that Mr. Dawson was markedly limited in his ability to walk, lift, handle, and carry. It appears that the ALJ began with the premise that Dr. Shorr's opinion was entitled to no special consideration unless he gave a reason to give it more weight. But a treating doctor's opinion is entitled to great weight unless the ALJ gives sufficient reasons to reject it. The ALJ may not state only that he gives the opinion little weight without explaining his reasons for giving it less than the significant weight due to a treating doctor's opinion. The

REPORT AND RECOMMENDATION - 7

ALJ erred in assessing Dr. Shorr's opinion.

*4. Dr. Phan*

Dr. Phan examined Mr. Dawson in April 2007. Dr. Phan opined that Mr. Dawson's gait and station were normal, his ability to use his arms and hands was intact, his speech, hearing, and vision were normal, and his heart failure would affect his ability to do strenuous activities and his endurance. Tr. 370-72. The ALJ found that Dr. Phan did not provide a definitive assessment of Mr. Dawson's ability to function on a sustained basis, but found it significant that Dr. Phan did not opine that Mr. Dawson was precluded from all work activity. Tr. 58.

The ALJ did not err in assessing Dr. Phan's opinion. A claimant's residual functional capacity is the most he can do despite his limitations. *See* SSR 96-8p. Dr. Phan did not address the most Mr. Dawson could do. Rather, he stated that there was a limit on what he could do, but failed to specify what that limit was. Given the lack of specificity in Dr. Phan's opinion, the ALJ did not err by failing to translate Dr. Phan's opinion into specific functional limitations.

*5. State agency physicians*

State agency medical consultant Linda Brooks opined in May 2007 that Mr. Dawson could occasionally lift or carry 20 pounds and frequently lift 10 pounds, stand, walk, or sit 6 hours in an 8-hour workday, and push or pull as stated for lifting. He could occasionally climb ramps and stairs, stoop, kneel, crouch, or crawl, and never climb ladders, ropes, or scaffolds. He should avoid concentrated exposure to hazards. Tr. 374-81. State agency doctor Norman Stanley, M.D., affirmed this assessment in November 2007. Tr. 408. The ALJ found that a non-examining medical expert's opinion may constitute substantial evidence of non-disability when not in conflict with the clinical findings of other examining or treating doctors and thus gave great weight to the state agency doctors' assessments. Tr. 57.

The ALJ is incorrect in his assertion that the state agency doctors' opinions did not conflict with the opinions of Mr. Dawson's treating doctors. Dr. Derksen-Schrock and Dr. Lewis opined that Mr. Dawson would not have been able to perform even sedentary work during the claimed disability period, and Dr. Shorr opined that Mr. Dawson's overall work level was sedentary. These opinions conflict with the state agency doctors' assertion that Mr. Dawson could perform light work. The ALJ thus cannot rely on these opinions in favor of the examining doctors' opinions without giving specific and legitimate reasons, supported by substantial evidence, for doing so. *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995). This the ALJ did not do. The ALJ erred in adopting the state agency doctors' assessment of Mr. Dawson's residual functional capacity.

**C.     Mr. Dawson's credibility**

Mr. Dawson next argues that the ALJ erred in finding him not fully credible. The ALJ did not find that Mr. Dawson was malingering and thus could reject his testimony only by making specific findings stating clear and convincing reasons for doing so. *Smolen*, 80 F.3d at 1283-84. An ALJ may consider "ordinary techniques of credibility evaluation," including the claimant's reputation for truthfulness, inconsistencies in his testimony or between his testimony and conduct, his daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms. *Id.* at 1284.

The ALJ found that Mr. Dawson was not fully credible, finding that the objective medical evidence did not support Mr. Dawson's allegations, he was not fully compliant with prescribed treatment at times, his daily activities revealed greater functioning than he alleged, and he engaged in drug and alcohol use during the disability period. Tr. 54-57.

A claimant's unexplained, or inadequately explained, failure to follow prescribed

treatment can be a clear and convincing reason to question a claimant's credibility. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). But where a claimant has a good reason for not following his prescribed treatment, this failure cannot be a reason to deny benefits. *Orn*, 495 F.3d at 638. The ALJ may not draw inferences from claimant's failure to seek treatment without first considering the claimant's explanations or other information in the record that may explain the failure. SSR 96-7p. The ALJ noted that the record showed several instances of noncompliance. Tr. 54. However, Mr. Dawson testified that he had difficulties maintaining his health insurance and obtaining his medications due to his unstable living situation and difficulties with transportation during the claimed disability period. Tr. 30-31. This record reflects these difficulties, and nothing suggests that they were not believable. *E.g.*, Tr. 280, 423-24, 489, 496, 502. The ALJ erroneously failed to consider Mr. Dawson's explanation for his difficulty following his prescribed treatment.

An ALJ may consider a claimant's daily activities when evaluating his credibility. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). Daily activities that contradict a claimant's other testimony or meet the threshold for transferrable work skills may form the basis of an adverse credibility determination. *Orn*, 495 F.3d at 639. The ALJ found that Mr. Dawson admitted to essentially normal activities of daily living and these activities revealed a significantly greater physical and mental functional ability than he alleged. Tr.57. However, while the ALJ discussed Mr. Dawson's reports of his daily activities during the claimed disability period, the ALJ also considered Mr. Dawson's testimony about his daily activities at the time of the September 2009 hearing—a time when Mr. Dawson agrees he was not disabled. Tr. 57. Mr. Dawson's level of functioning after the claimed disability period was not relevant to the determination of his level of functioning during that period. The ALJ's failure to

differentiate between Mr. Dawson's daily activities during the claimed disability period and those he engaged in afterwards was error.

The ALJ may consider a lack of supporting objective medical evidence when evaluating a claimant's credibility. *Burch*, 400 F.3d at 681. And the ALJ's consideration of Mr. Dawson's drug and alcohol use during the claimed disability period was a valid consideration in evaluating his credibility. In general, the ALJ's use of invalid reasons to support his adverse credibility finding may be harmless if, despite the error, there remains substantial evidence to support the ALJ's conclusion. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195-97 (9th Cir. 2004). In this case, however, because of the ALJ's substantial reliance on invalid reasons, combined with the ALJ's errors in evaluating the treating doctors' opinions, the Court is not confident that substantial evidence supports the ALJ's credibility decision, despite the existence of some valid reasons to question Mr. Dawson's credibility.

### D.  **Remand for award of benefits**

Mr. Dawson asks the Court to remand this case for an award of benefits. Because the ALJ has committed reversible error, the Court has discretion to remand for further proceedings or to award benefits. *See Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). The Court may remand for an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen*, 80 F.3d at 1292). This occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77.

Where an ALJ fails to provide adequate reasons for rejecting a treating physician's opinion, the Court may credit that opinion as a matter of law. *Lester*, 81 F.3d at 834. Dr. Derksen-Schrock and Dr. Lewis opined that Mr. Dawson would not be able to work on a regular and sustained basis during the disability period. Dr. Shorr opined that Mr. Dawson's work level was sedentary but he was markedly limited in his ability to walk, lift, handle, and carry. These opinions, when given the effect required by law and when viewed in combination with the rest of the evidence, demonstrate that Mr. Dawson was disabled during the claimed disability period. These opinions should be credited as true. In addition, the Court cannot say that the ALJ's evaluation of Mr. Dawson's credibility was supported by substantial evidence. His testimony provides further support for a finding that he was disabled during the period at issue.

Mr. Dawson seeks benefits for a closed period of disability, from January 1, 2006, through May 1, 2009. The record contains all of Mr. Dawson's medical records from this time period. Further development of the record is unnecessary and there are no outstanding issues that must be resolved before a determination of disability can be made. The evidence in the record, when properly credited, would require the ALJ to find Mr. Dawson disabled during the claimed disability period. Accordingly, the Court recommends that this case be remanded with a direction for the award of benefits for the closed disability period.

## CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be **REVERSED** and the case be **REMANDED** for an award of benefits for the closed period from January 1, 2006, through May 1, 2009. A proposed order accompanies this Report and Recommendation. Any objections to this Recommendation must be filed and served upon all parties no later than **July 11, 2011.** If no objections are filed, the matter will be ready for the

1  Court's consideration on that date. If objections are filed, any response is due within 14 days
2  after being served with the objections. The matter will then be ready for the Court's
3  consideration on the date the response is due. Objections and responses shall not exceed twelve
4  pages. The failure to timely object may affect your right to appeal.

5  DATED this 27th day of June, 2011.

/s/ BRIAN A. TSUCHIDA
BRIAN A. TSUCHIDA
United States Magistrate Judge